The act of 1777, ch. 2, sec. 76, directs bail to be given at the commencement of a suit in the county court, and also that such bail may surrender the principal in discharge of themselves at any time *Page 118 
before final judgment obtained against them. Sec. 20. It allows either party an appeal to this Court (sec. 82) but requires the appellant to give bond, with sufficient sureties, for the prosecution of such appeal with effect, and for performing the judgment, sentence, and decree which this Court shall make or pass thereon, in case such appellant shall have the cause decided against him; but the act makes no provision for any surrender to be made by these latter sureties, which is a proof that the Legislature did not intend that they should be dischargeable by means of a surrender. Had this been their meaning, they certainly would have declared it, as they had the subject of surrender under their consideration, and made provision for it in certain cases in this very act. The act probably goes upon this reason, that the plaintiff having by a suit at law, and verdict in his favor, established the probable justice of his demand, the defendant ought then to be held to more strict terms than at the institution of the suit, before there was any presumptive evidence on record against him. The Legislature probably thought it reasonable, after such evidence, that the defendant should not have it in his power to defeat the plaintiff by conveying his property to other creditors, or by wasting it during the pendency of the appeal, which event, combined with the circumstance of an intermediate surrender by the bail, would leave the plaintiff entirely remediless, were it not for the security he has by means of the appeal bond. At the same time that they allowed the privilege of appealing to the defendant, they were solicitous to provide against every possible inconvenience that might result from it to the other party, and this they have intended to effect by requiring an appeal bond with condition for prosecuting with effect or paying the condemnation in case of a judgment against the appellant. This secures the plaintiff at all events, and against all practices to his prejudice. The sureties for the appeal, therefore, cannot surrender nor can they be discharged by the surrender of the bail.
Much argument hath been used respecting the meaning of the act of 1785, ch. 2, and it hath been contended that the appeals there (170) spoken of are from judgments and verdicts rendered in actions subjected by that act to the county court jurisdictions, and not appeals from all action in general. The title of the act, and its preamble, it is true, only looks to the enlargement of the county court's jurisdiction; but the provisos in the first clause and the second clause relate to appeals in general, and are to be taken to be in pari materia
with the act of 1777, ch. 2. They are both parts of one whole, and these parts of the act of 1785 have a reference to appeal bonds taken pursuant to the act of 1777. This is plainly evinced by the preamble or introductory *Page 119 
part of the second clause: "And whereas from the manner in which appeals from the county courts of pleas and quarter sessions have been heretofore obtained in numerous instances, frequent injustice has happened to many just suitors from the delay incident to said appeals." This is the most unequivocal reference to abuses committed in the prosecution of appeals previous to that time that language can signify, that is to say, to the prosecution of appeals taken pursuant to the act of 1777; and for the remedying these abuses it directs appeal bonds for the future to be sent up as a part of the record; but it does not direct any new species or form of bonds. It is additional to the act of 1777, which did not provide for the sending up such bonds, and the consequence of their omission frequently was that the bonds were lost or mislaid, and the remedy upon them frustrated, to the prejudice and loss of the appellees. The act of 1777 did not ascertain the mode of proceeding upon appeal bonds by the appellee, when it should be necessary to proceed upon them, whether by a new action of debt by sci. fa. by a motion in court for judgment or how otherwise; and of course doubts were entertained upon that point. The act of 1777 imposed no penalty by way of restriction upon vexatious and unjust appeals, prayed sometimes for the mere purpose of delay, at others for the purpose of gratifying a litigious disposition. All these omissions are supplied by the act of 1785. Appeal bonds by that act are to be a part of the record transmitted to the Superior Court. The appellee may enter judgment upon theminstanter, by motion to the court; and if the judgment below be affirmed, the appellant shall pay interest at the rate of 12 1/2 per cent for his delay. And if the act of 1785 relates to appeals generally, the arguments built upon the contrary position must all fall to (171) the ground.
It was argued for the defendants that the commitment of their principal after his surrender by the bail was a commitment in execution, and that there can be no fi. fa. against the sureties after this. None of these statements are just. He was not, nor could be, committed in execution, because at the time of the surrender there was no judgment against him. But suppose him to have been committed in execution, it will not follow that that operate as a discharge of his sureties, any more than in the case where there are three obligors to a bond, and one is taken and imprisoned in execution for the debt; that will not discharge the others. 5 Rep., 86; 1 Roll. Ab., 903, pl. 21. Nothing short of payment, or a release, will discharge the coobligors in such case. Had he been in execution, and been discharged by the plaintiff, that might have discharged his sureties; but a man can never be in execution till after *Page 120 
judgment, and a prayer for that purpose entered on record, and the prayer allowed by a committitur entered on record, when a principal is surrendered by his bail — for if he could be in execution merely by a surrender without prayer to the plaintiff, he might then take advantage of the insolvent debtor's act, and also might preclude the plaintiff of the benefit of a fi. fa. when perhaps at the time of the surrender the plaintiff might know that in a little time to come he would have property enough, as by the death of relations, marriage, or other means — and should he be once in execution by his body, the plaintiff could never afterwards during his life have a fi. fa., and therefore the law will not say he shall be in execution, for the plaintiff, even upon a surrender after judgment, unless the plaintiff chooses that he shall be so, which choice must be manifested by a prayer on record. And if he be imprisoned upon a surrender, for instance, to the sheriff out of court, the court will release him from his imprisonment after judgment unless the plaintiff, in a reasonable time, apply to charge him in execution. But upon this last point, though the Court seemed to be very clear, Mr. Moore still thought the law was otherwise, and pressed for further time to argue it, which was allowed him by the Court, and the argument did not again come on during this term.